UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

RAY CHAMORRO,

    Petitioner,

v.                                    CAUSE NO. 3:21-CV-411 DRL-MGG

RON NEAL,

    Respondent.

## OPINION AND ORDER

Ray Chamorro (with counsel) filed an amended habeas corpus petition to challenge his conviction for murder under Case No. 91D01-1210-MR-136. After a jury trial, the White Circuit Court sentenced him to 60 years of incarceration.

## BACKGROUND

In deciding this habeas petition, the court must presume the facts set forth by the state courts are correct unless they are rebutted with clear and convincing evidence. 28 U.S.C. § 2254(e)(1). The Indiana Court of Appeals summarized the evidence presented at trial as follows:

> On October 1, 2012, Alexandria Chapman (Chapman) communicated to David Jones (Jones) that she wanted to "get high." On the same day, Jones called Robert Breeden (Breeden), a drug supplier, met with him, and purchased a quarter gram of methamphetamine. Jones took it back to Chapman's house. Also present at the house was Robby Brown (Brown) and Chamorro. According to Jones, he gave a little bit of the methamphetamine to Brown, Chamorro, and Chapman. He then used the rest of the methamphetamine. Jones never felt a rush. The next day, Jones received a phone call from Chris Martin (Martin), also a friend to Breeden, who told him that Breeden had sold him bad drugs. Soon after, Jones placed

a call to Breeden and complained of the bad drugs. Breeden promised Jones he would take care of him the next time he cooked a batch.

On October 3, 2012, Chamorro, Jones, Brown, Chapman, and LaShae Ramsey (Ramsey) were hanging out at Brown's house. That evening, Jones called Breeden several times, demanding that he deliver on his promise and replace the bad drugs. During one of the many phone calls that Jones made to Breeden, Tye Rentfrow (Rentfrow), a friend to Breeden and who also helped to manufacture the methamphetamine, grabbed the phone from Breeden and told Jones, "you'll get it at 7:00 a.m." Jones asked who he was talking to, and Rentfrow responded, "It's your daddy, bitch." The comment angered Jones, and he started arguing with Rentfrow. Jones kept calling Breeden's phone, but every time either Rentfrow or Breeden would hang up. On one of the calls that went through, Chamorro grabbed the phone from Jones and started yelling at Rentfrow, asking him, "Do you know who the fuck you're talking to, bitch? Where the fuck you at?"

After the heated exchange, Chamorro and Jones decided to go find Rentfrow. Before that though, Chamorro wanted to go back to his house to obtain his gun. At the time, Ramsey was the only person who had a car. At first she refused to take Chamorro, but she eventually agreed. All five got in the car and drove to Chamorro's house. After Chamorro retrieved his gun, Ramsey drove the men to Martin's house. Martin's house, to some extent, operated as a flop house where people, including Breeden spent time. On their way their way to Martin's house, according to Ramsey, Jones asked Chamorro why he needed the gun and Chamorro responded by saying "I'm tired of people out here thinking I'm a bitch. I'm going to show them I ain't a bitch." Ramsey dropped off Chamorro, Jones, and Brown at Martin's house and then she left with Chapman.

Once Chamorro, Jones, and Brown were inside the house, they found a passed out Martin in the hallway. Jones shook him aggressively until he woke up. Next, Chamorro pointed a gun to Martin's head and asked him to call Breeden. Martin called Breeden and asked him to bring back his car which Breeden had been borrowing. Breeden promised Martin that he would be at Martin's house in about ten minutes. They waited for about ten to fifteen minutes before Martin suggested that Breeden and Rentfrow might be down at "Tioga Bridge," cooking methamphetamine. Just as the men were leaving Martin's house, Breeden and Rentfrow pulled into the driveway in Martin's car. Jones and Chamorro saw the car as they were walking away from the house, so they changed their course and ran toward Martin's car. Rentfrow hopped out from the passenger seat. Once outside the car, Jones asked Rentfrow if he had called him a bitch, but Rentfrow

2

> denied having said that. At that moment, Jones punched Rentfrow in the face. Rentfrow staggered back toward the car but caught his balance and came right back. At that point, Chamorro pulled out his gun and shot straight at Rentfrow. Rentfrow ran from the scene screaming, clutching his chest but later fell at the corner of the Martin's house. Chamorro also fired two additional shots toward the house as he was running away from the scene. During the same time or close to the end of the third shot, Jones, Brown, and Chamorro took off running in different directions but soon reunited at a high school nearby. Brown then called Ramsey and asked her to pick them up. Before Chamorro got inside the car, he hid the gun under a garbage can. While in the car, Chamorro admitted that he had shot Rentfrow in the chest. Ramsey drove Chamorro and Jones to Chicago and returned to Indiana with Brown and Chapman. Meanwhile, at the crime scene, Breeden called 911, and shortly thereafter the police arrived, arrested Breeden and started their investigation.
>
> On October 26, 2012, the State filed an Information charging Chamorro with Count I, murder, I.C. § 35–42–1–3. On November 2, 2012, the State filed an amendment, adding, Count II, felony murder, I.C. § 35–42–1–1(3). However, on June 4, 2013, the State moved to dismiss the felony murder Count. A four-day jury trial was conducted from July 15 through July 18, 2013. At trial, Chamorro requested a jury instruction for self-defense, which the trial court denied. At the close of the evidence, the jury found Chamorro guilty as charged. On August 22, 2013, the trial court sentenced him to sixty years, executed.

ECF 21-5 at 2-5; *Chamorro v. State*, 13 N.E.3d 559 (Ind. App. 2014).

In the amended habeas petition, Mr. Chamorro argues that he is entitled to habeas relief because the trial court refused to instruct the jury on self-defense and because trial counsel did not present evidence to support the self-defense instruction, including the prior inconsistent statements of Robert Breeden and Robby Brown and photographs of knives found at the scene of the crime. ECF 12. In the traverse, Mr. Chamorro asserts additional ineffective assistance of trial counsel claims, alleging that trial counsel should have objected to a juror and that trial counsel should have objected to evidence suggesting his gang membership. ECF 26-1 at 31-35. The court cannot grant relief on these

claims because Mr. Chamorro did not include them in the amended petition.[1] *See* Rule 2(c)(1) of the Rules Governing Section 2254 Cases ("The petition must specify all the grounds for relief available to the petitioner."); *Jackson v. Duckworth*, 112 F.3d 878, 880 (7th Cir. 1997) ("[A] traverse is not the proper pleading to raise additional grounds.").

STANDARD

"Federal habeas review . . . exists as a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Woods v. Donald*, 135 S.Ct. 1372, 1376 (2015) (quotations and citation omitted).

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

> [This] standard is intentionally difficult to meet. We have explained that clearly established Federal law for purposes of §2254(d)(1) includes only the holdings, as opposed to the dicta, of this Court's decisions. And an unreasonable application of those holdings must be objectively unreasonable, not merely wrong; even clear error will not suffice. To satisfy this high bar, a habeas petitioner is required to show that the state court's ruling on the claim being presented in federal court was so lacking in

---

[1] After reviewing the record, the court finds that Mr. Chamorro would not have prevailed on these claims even if he had properly presented them. As explained below, Mr. Chamorro was not entitled to a self-defense instruction under Indiana law, and the evidence at the trial that he intentionally shot and caused the death of the victim was overwhelming. Consequently, the court could not find that the state courts' determination that Mr. Chamorro had not demonstrated prejudice for these claims was objectively unreasonable. Moreover, these claims are untimely. *See Mayle v. Felix*, 545 U.S. 644, 657 (2005); 28 U.S.C. § 2244(d); Fed. R. Civ. P. 15(c).

> justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*Woods,* 135 S. Ct. at 1376 (quotation marks and citations omitted). Criminal defendants are entitled to a fair trial but not a perfect one. *Rose v. Clark*, 478 U.S. 570, 579 (1986). To warrant relief, a state court's decision must be more than incorrect or erroneous; it must be objectively unreasonable. *Wiggins v. Smith*, 539 U.S. 510, 520 (2003). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quotation marks omitted).

## DISCUSSION

A.   *Self-Defense Instruction.*

Mr. Chamorro argues that he is entitled to habeas relief because the trial court declined to instruct the jury on self-defense. "Instructional error will not support a petition for federal habeas relief unless it is shown not merely that the instruction is undesirable, erroneous, or even universally condemned but that the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." *Cole v. Young*, 817 F.2d 412, 423 (7th Cir. 1987) (quotations omitted). "An omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law." *Bonner v. DeRobertis*, 798 F.2d 1062, 1067-68 (7th Cir. 1986). "Therefore, the burden of establishing prejudice is greater when there is an omission rather than an erroneous instruction." *Id.*

Under Indiana law, to prevail on a self-defense claim, "a defendant must establish that he or she was in a place where he or she had the right to be, acted without fault, and was in reasonable fear or apprehension of death or great bodily harm." *Miller v. State*, 720 N.E.2d 696, 699-700 (Ind. 1999). At the time of the crime, the Indiana statute authorizing the affirmative defense of self-defense read as follows:

> (a) A person is justified in using reasonable force against another person to protect the person or a third person from what the person reasonably believes to be the imminent use of unlawful force. However, a person:
>
>> (1) is justified in using deadly force; and
>>
>> (2) does not have a duty to retreat;
>
> if the person reasonably believes that that force is necessary to prevent serious bodily injury to the person or a third person or the commission of a forcible felony. No person in this state shall be placed in legal jeopardy of any kind whatsoever for protecting the person or a third person by reasonable means necessary.
>
> * * *
>
> (e) Notwithstanding subsections (a), (b), and (c), a person is not justified in using force if:
>
>> (1) the person is committing or is escaping after the commission of a crime;
>>
>> (2) the person provokes unlawful action by another person with intent to cause bodily injury to the other person; or
>>
>> (3) the person has entered into combat with another person or is the initial aggressor unless the person withdraws from the encounter and communicates to the other person the intent to do so and the other person nevertheless continues or threatens to continue unlawful action.

Ind. Code § 35-41-3-2 (2012).

At the trial, the sequence of events surrounding the shooting were largely uncontested, and Mr. Chamorro confirmed many of the material facts through his testimony. The parties agreed that Robert Breeden sold methamphetamine to David Jones but that Mr. Jones was dissatisfied with it. Trial Tr. 53-56, 531-32. They agreed that Mr. Jones made numerous telephone calls to Mr. Breeden and the victim in an effort to obtain more methamphetamine. *Id.* at 56-59.

On October 3, 2013, at about 10:00 p.m., Mr. Chamorro and Mr. Jones were at Robby Brown's residence and had consumed alcohol, Klonopin, and Valium. *Id.* at 57, 76-77, 538-39. During a telephone call, the victim insulted Mr. Chamorro and Mr. Jones, which offended them, and Mr. Chamorro then engaged in six or seven heated conversations with the victim. *Id.* at 58, 185, 543-46. Thereafter, Messrs. Chamorro, Brown, and Jones decided to go to Mr. Breeden's residence to get methamphetamine from him. *Id.* at 550. Before they arrived at Mr. Breeden's residence, Mr. Chamorro persuaded his girlfriend to take him to her residence to retrieve his gun against her strong objections. *Id.* at 59-61, 186-89, 494-97, 546-50.

When Mr. Chamorro and Mr. Jones arrived at Mr. Breeden's residence after retrieving the gun, Mr. Jones punched Mr. Breeden's roommate in the face, Mr. Brown poked him with a pool stick, and Mr. Chamorro pointed the gun at the roommate's face twice. *Id.* at 62-63, 192-93, 554-55, 583. Mr. Chamorro told the roommate to call Mr. Breeden and the victim and to tell them to return to the residence to meet with Mr. Chamorro and Mr. Jones. *Id.* at 62-63, 192-93, 557. About ten minutes later, at about 3:00 a.m., Mr. Breeden and the victim pulled up to the residence in the vehicle, and Mr. Jones

7

punched the victim as the victim approached him. *Id.* at 64-66, 194-196, 562-66. The parties disputed whether the victim had a weapon and Mr. Chamorro's intent in firing the handgun, but the defense did not contest that Mr. Chamorro shot the victim with the handgun and that the victim died as a result. *Id.* at 66, 196, 566-67, 607. On cross-examination, Mr. Chamorro conceded that he "created the situation" that led to the victim's death by arranging the meeting at Mr. Breeden's residence. *Id.* at 593-95.

At the close of evidence, trial counsel moved for a self-defense instruction, and the motion was resolved as follows:

> **Trial Counsel:** With respect to the defendant's tendered instructions, defendant tendered three instructions, Your Honor, Instruction Number One was a self-defense instruction, the instruction is a pattern instruction. We believe that the evidence in the case supports the giving of that instruction, and that's premised upon the facts that have been introduced through each of the witnesses that are testifying. We understand that there are certain limitations and restrictions that may preclude the giving of that instruction. We find that in this particular case, that those limitations or restrictions are inapplicable, and we ask the Court to give that instruction on self-defense, as there's none in the pattern, the instructions the Court's proposing to give. We believe that it is necessary for the jury to have a full, fair opportunity to make a determination based upon the evidence that's given. We would ask the Court to once again consider giving the Final Instruction Number One tendered by the defendant.
>
> * * *
>
> **Prosecution:** Judge, in response to the self-defense argument, as previously argued, the State believes self-defense is, in fact, not a defense in this case; therefore, an instruction on self-defense should not be given for the following reasons. In the State of Indiana, to be entitled to a self-defense argument or defense in a criminal case, a person has to be in a place where he has a right to be, has to have acted without fault. The State's belief is there is no evidence to support the inference that the defendant in this particular case was in a place that he had a legal right to be, nor did he act without fault. In fact, he was committing criminal offense while at the Washington Street address, primarily pointing a handgun at a human

8

being, intimidating that human being, and he was involved in a drug transaction, all of which constitute criminal offenses; therefore, he did not act without fault. Furthermore, he provoked this entire episode, in the State's opinion, by forcing Mr. Martin to make a phone call to Mr. Breeden and Mr. Rentfrow thereby luring them to the position and ultimately causing the death. [The relevant statute] specifically states that you're not entitled to self-defense if you're committing a crime at the time, or if you are provoking the act; therefore, we believe that self-defense does not exist and would ask the Court not to give the self-defense instruction.

**The Court:** Alright. The Court does find that a valid claim of self-defense is legal justification for an otherwise criminal act. And would support the issuance of a self-defense instruction. Indiana case law, Indiana statutes, and the pattern jury instructions provide that a person may not use force if he is committing a crime that is directly and immediately connected to the confrontation, he provokes a fight with another person with intent to cause bodily injury to that person, or he has willingly entered into a fight with another person or started a fight unless he withdraws from the right and communicates to the other person his intent to withdraw, and the other person nevertheless continues or threatens to continue to fight.

A person may use reasonable force against another person to protect himself or someone else from [what] he reasonably believes to be the eminent use of unlawful force. A person is justified in using deadly force and does not have a duty to retreat only if he reasonably believes that the deadly force is necessary to prevent serious bodily injury to himself or a third person or to prevent the commission of a felony. Indiana law requires that the amount of force that is reasonably necessary to defend one's self is determined from the standpoint of the defendant in light of all of the surrounding circumstances, and the Court is basing its ruling on that premise.

Case law also provides that, for a claim of the use of deadly force and self-defense to prevail, the evidence must establish that the person was in a place where he had a right to be, the person did not provoke, instigate, or participate willingly in the confrontation and the person must have had a reasonable fear of death or serious bodily injury.

The Court does find that based on the evidence presented, though not charged, the defendant at 610 West Washington committed at least pointing

9

a firearm at Chris Martin,[2] which, whether it was done playfully or not, caused and later directly led to a phone call being placed at the direction of the defendant by Chris Martin to Robert Breeden directing Robert Breeden and Tye Rentfrow to come to the 610 West Washington Street address in Chris Martin's vehicle where the defendant and two others, Robby Brown and David Jones, were waiting. Prior to that, the defendant participated in several phone conversations with Tye Rentfrow, either provoking, instigating, or participating willingly in confrontations that occurred over the phone and which directly led to the later confrontation that led to the death of Tye Rentfrow.

The Court believes that self-defense is not an issue in this case for those reasons, and the jury will not be instructed on the defense of self-defense.

Trial Tr. 613-18.

On direct appeal, the Indiana Court of Appeals affirmed the decision of the lower court, finding that Mr. Chamorro did not act without fault and that he was not in reasonable fear of death or great bodily harm. ECF 21-5 at 5-7. The appellate court further found that Mr. Chamorro was the initial aggressor and that he used excessive force. *Id.*

After reviewing the record, the court cannot find that the state courts made an unreasonable determination by denying a self-defense instruction. To Mr. Chamorro's point, the record may contain some support that the victim was armed and that Mr. Chamorro had a reasonable fear of bodily harm, including testimony from Messrs. Chamorro and Jones, and photographs of weapons found at the scene of the crime. Nevertheless, Mr. Chamorro does not dispute the state court finding that he did not act without fault, either by committing a crime directly connected to his confrontation with the victim or by provoking the victim into the confrontation. He also does not dispute

---

[2] Under Indiana law, "a person who knowingly or intentionally points a firearm at another person commits a Level 6 felony." Ind. Code § 35-47-4-3.

that this finding foreclosed his use of self-defense under Indiana law. He also does not argue that the State of Indiana's interpretation of the affirmative defense is incorrect or that it violates the Constitution. Even if he had, he would not have prevailed on these arguments. *See Gilmore v. Taylor*, 508 U.S. 333, 343 (1993) (the right to present a complete defense has never been extended to affirmative defenses); *Whipple v. Duckworth*, 957 F.2d 418, 422 (7th Cir. 1992) (interpretation of state law is matter for the state courts and legislatures). Therefore, this claim is not a basis for habeas relief.

      B.     *Ineffective Assistance of Trial Counsel*.

Mr. Chamorro argues that he is entitled to habeas relief because trial counsel did not present additional evidence to support his claim of self-defense. He maintains that trial counsel should have presented Mr. Breeden's prior inconsistent statements as to whether his roommate had a knife and to the victim's intent in meeting with Mr. Chamorro and Mr. Jones, testimony from Mr. Brown that he saw the victim reach toward his pocket, and photographs of knives. According to Mr. Chamorro, Mr. Breeden told law enforcement that the victim said, "Let's go over there and pay him off or whatever, do whatever I got to do, beat whoever's ass and we'll get another car and go cook." ECF 26-1 at 23.

To prevail on an ineffective assistance of counsel claim in the state courts, a petitioner must show that counsel's performance was deficient and that the deficient performance prejudiced him. *Strickland v. Washington*, 466 U.S. 668 (1984). The test for prejudice is whether there was a reasonable probability that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

A reasonable probability is a probability "sufficient to undermine confidence in the outcome." *Id.* at 693. In assessing prejudice under *Strickland*, "[t]he likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 112 (2011). "On habeas review, [the] inquiry is now whether the state court unreasonably applied *Strickland*." *McNary v. Lemke*, 708 F.3d 905, 914 (7th Cir. 2013). "Given this high standard, even 'egregious' failures of counsel do not always warrant relief." *Id.*

At the post-conviction stage, the Indiana Court of Appeals rejected this claim, finding that trial counsel introduced ample evidence that the victim was armed, including testimony from investigating officers who found knives at the scene of the crime and a photograph of one such knife. ECF 21-12 at 11-16. The appellate court also found that additional evidence suggesting that the victim had a knife would not have changed the outcome of the case given the finding that the affirmative defense was not available to Mr. Chamorro due to his use of excessive force. *Id.*

The trial court denied the self-defense instruction finding that Mr. Chamorro committed a crime that was directly connected to the confrontation and that Mr. Chamorro instigated the confrontation with the victim. The trial court made these findings based on the undisputed evidence that Mr. Chamorro engaged in heated conversations with the victim, pointed a handgun at the roommate, and told the roommate to call Mr. Breeden and the victim to summon them to the residence. Given the trial court's specific reasoning on the self-defense instruction, it is unclear why Mr. Chamorro believes that additional evidence of knives would have affected the trial

court's decision. Further, the purported statement of the victim regarding his intent or willingness to engage in violence could have occurred only after the roommate had called him at Mr. Chamorro's direction; the record contains no suggestion that the victim had any other way of knowing that Mr. Chamorro and Mr. Jones wanted an immediate meeting with him or where they were located. Consequently, presenting this statement through Mr. Breeden's testimony would have been unlikely to affect the finding that Mr. Chamorro instigated the confrontation. Because Mr. Chamorro has not shown prejudice, the court cannot find that the state courts' decision on this claim was unreasonable. Consequently, the claim that trial counsel should have presented additional evidence of self-defense is not a basis for habeas relief.

## CERTIFICATE OF APPEALABILITY

Pursuant to Section 2254 Habeas Corpus Rule 11, the court must grant or deny a certificate of appealability. To obtain a certificate of appealability under 28 U.S.C. § 2253(c), the petitioner must make a substantial showing of the denial of a constitutional right by establishing "that a reasonable jurist could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). For the reasons explained in this order, there is no basis for encouraging Mr. Chamorro to proceed further.

For these reasons, the court DENIES the amended habeas corpus petition (ECF 12); DENIES a certificate of appealability pursuant to Section 2254 Habeas Corpus Rule

13

11; and DIRECTS the clerk to enter judgment in favor of the respondent and against the petitioner.

SO ORDERED.

March 14, 2022                                                          *s/ Damon R. Leichty*
                                                                        Judge, United States District Court